IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **DURWIN HAMPTON**, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>**GENERAL MOTORS, LLC**,<br><br>*Defendant.* | Case No. 21-CV-250-RAW |

## ORDER

This matter comes before the court on the Motion to Dismiss filed by Defendant General Motors, LLC [Dkt. No. 7]. For the reasons set forth below, the court denies this motion.

### BACKGROUND

This class action lawsuit is about allegedly defective automobile engines. Plaintiff Durwin Hampton ("Mr. Hampton") asserts five causes of action: (1) breach of express warranty; (2) breach of the implied warranty of merchantability; (3) fraudulent concealment; (4) violations of the Oklahoma Consumer Protection Act; and (5) unjust enrichment.

Beginning in 2006, General Motors Corporation ("Old GM") installed the Generation IV 5.3 Liter V8 Vortex 5300 LC9 engine ("Generation IV Engine") in many of its most popular vehicles. Then in 2009, Old GM filed for protection under Chapter 11 of the United States Bankruptcy Code. Defendant General Motors, LLC ("GM"), ultimately acquired the assets of Old GM, emerged from the bankruptcy proceeding, and continued manufacturing vehicles equipped with Generation IV Engines. These engines consume an improperly high quantity of oil that far exceeds industry standards for reasonable oil consumption ("Oil Consumption Defect"). The Oil Consumption Defect is primarily caused by defective piston rings. These rings, which should

prevent oil from traveling into the combustion chamber, wear out prematurely and lose sealing capacity. The excessive oil consumption caused by the Oil Consumption Defect results in low oil levels, insufficient lubricity levels, and internal engine component damage.

GM has known of the Oil Consumption Defect and resulting engine damage since 2008. Dating back to model year 2007 vehicles, GM received an extraordinary number of customer complaints about excessive oil consumption in vehicles with Generation IV Engines. Its engineers began investigating the Oil Consumption Defect in at least 2008, when it was determined the piston rings were prematurely failing and causing excessive oil consumption. On January 8, 2010, the GM investigative team produced its "executive report" on oil consumption in Generation IV Engines. Then beginning in 2010, GM issued technical service bulletins to its dealers which explicitly addressed the issue of oil consumption in Generation IV Engines. Finally, in 2012, GM generated a "problem investigation report" regarding oil consumption in Generation IV Engines. Despite this knowledge, however, GM continued selling vehicles containing the defective engines.

At all times relevant to this action, GM knowingly omitted and/or concealed the Oil Consumption Defect. GM did not disclose the Oil Consumption Defect to Mr. Hampton or other consumers at or prior to the time of sale. Instead, it extensively advertised the performance benefits of Generation IV Engines, informing customers such engines were dependable, long-lasting, and of the highest quality. Then beginning with certain model year 2014 vehicles, GM discontinued use of the Generation IV Engines and began installing materially redesigned Generation V Vortec 5300 engines.

Mr. Hampton purchased a 2013 GMC Sierra equipped with a Generation IV Engine on February 26, 2013. When the vehicle had approximately 35,000 miles on the odometer, Mr. Hampton first noticed it was consuming excessive amounts of oil. He has consistently had to add

two quarts of oil in between regular oil changes and has experienced a rattling noise in the engine. Prior to purchasing the vehicle, Mr. Hampton spoke with a sales representative and saw commercials which promoted the vehicle's reliability and durability. GM, however, did not disclose the Oil Consumption Defect before or at the time of sale. Had GM done so, Mr. Hampton would not have purchased the vehicle or would have paid less for it.

## LEGAL STANDARD

When addressing a Rule 12(b)(6) motion to dismiss, the court does not weigh the evidence the parties might present at trial but instead assesses whether the plaintiff's complaint is legally sufficient to state a claim for which relief may be granted. *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1135 (10th Cir. 2014). A complaint is legally sufficient when it contains enough "facts to state a claim to relief that is plausible on its face," and the factual allegations are "enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A well-pled complaint may survive a motion to dismiss "even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Id*. In assessing a claim's plausibility, the court must accept all well-pled facts as true and view them in the light most favorable to the claimant. *Brokers' Choice*, 757 F.3d at 1165. The court is not bound, however, to accept an allegation as true when it amounts to no more than a conclusory statement. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## ANALYSIS

GM has moved to dismiss all of Mr. Hampton's claims. It first argues he lacks standing and then raises substantive challenges to the five causes of action.

### I.      Standing.

GM asserts Mr. Hampton lacks Article III standing because he has not alleged a sufficiently concrete and particularized injury. Standing is conferred on a plaintiff where three elements are

3

present: (1) the plaintiff has suffered an injury in fact; (2) there is a causal connection between the injury and the complained-of conduct; and (3) it is likely that the injury will be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

Mr. Hampton has standing to assert his claims. First, he suffered an injury in fact when he paid for a vehicle that required oil levels dramatically higher than a reasonable consumer would expect. An "injury in fact" is the "invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Id*. (quotations and alterations omitted). Mr. Hampton suffered financial harm when he purchased a vehicle with the Oil Consumption Defect, and economic injury is sufficient for standing under Article III. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021) ("If a defendant has caused physical or monetary injury to the plaintiff, the plaintiff has suffered a concrete injury in fact under Article III."); *Cole v. Gen. Motors Corp.*, 484 F.3d 717, 723 (5th Cir. 2007) (holding that plaintiffs who purchased vehicles with defective airbags had standing because they sought "recovery for their actual economic harm (e.g., overpayment, loss in value, or loss of usefulness)[.]"). Mr. Hampton suffered an injury in fact by overpaying for the vehicle and not receiving the full benefit of his bargain. Second, there is a sufficient causal connection between the injury (monetary harm) and the complained-of conduct (sale of a defective product). GM developed the Generation IV Engine, marketed it as of the highest quality, and then sold it to Mr. Hampton, thereby causing his financial harm. Finally, it is likely that a favorable decision will redress the injury. Mr. Hampton's injury is fully redressable by monetary damages. Consequently, he has standing to assert his claims.

## II.     Express Warranty.

GM asserts Mr. Hampton failed to state a claim for breach of express warranty because its express warranty does not cover the defect at issue. GM's express warranty provides as follows:

> The warranty covers repairs to correct any vehicle defect, not slight noise, vibrations, or other normal characteristics of the vehicle **related to materials or workmanship** occurring during the warranty period.

(Emphasis added). The parties dispute whether the phrase "related to materials or workmanship" modifies the phrase "any vehicle defect" or whether it modifies the phrase "or other normal characteristics of the vehicle." According to GM, the warranty should be interpreted as: "The warranty covers repairs to correct any vehicle defect related to materials or workmanship, but not slight noise, vibrations, or other normal characteristics of the vehicle." According to Mr. Hampton, conversely, the warranty should be interpreted as: "The warranty covers repairs to correct any vehicle defect, but not if the defect is slight noise, vibration, or another normal characteristic of the vehicle related to materials or workmanship." GM interprets the warranty as applying only if the defect is related to materials or workmanship (excluding the enumerated exceptions), whereas Mr. Hampton interprets the warranty as applying to any vehicle defect (excluding the enumerated exceptions).

The court declines to adopt GM's narrow reading. The first step in this analysis is "examining the plain language" of the warranty. *SOLIDFX, LLC v. Jeppesen Sanderson, Inc.*, 841 F.3d 827, 833 (10th Cir. 2016). The clause begins broadly and covers "any vehicle defect." Then a comma and the word "not" are used to identify the category of defects to which the warranty does not apply. This is the most straightforward reading of the provision. GM would have the court rewrite the clause, adding a comma between the words "vehicle" and "related," such that it takes on an entirely new meaning and applies only to defects in materials or workmanship. A reasonable consumer, however, would likely view the warranty as applying to "any vehicle defect," except the specifically excluded categories. While the language is not a model of clarity, any ambiguity in its meaning should be construed against its drafter, GM. *See McMinn v. City of Oklahoma City*,

5

1997 OK 154, ¶ 14, 952 P.2d 517, 522. Additionally, the United States District Court for the District of Oregon has recently considered these exact same arguments regarding the exact same warranty. Its detailed analysis and ruling against GM on this point are persuasive. *Martell v. Gen. Motors LLC*, 537 F. Supp. 3d 1192, 1205 (D. Or. 2021) ("GM asks the Court instead to construct an entirely new meaning that is different from the one suggested by a plain reading of the clause itself and the warranty as a whole. The Court declines to rewrite an entire clause, changing its meaning in significant ways[.]"). As alleged in the Complaint, the GM warranty is applicable to any vehicle defect, but not if the defect is slight noise, vibration, or another normal characteristic of the vehicle related to materials or workmanship. Pursuant to this warranty, GM agreed it would repair or replace covered vehicle defects during the warranty period.

Mr. Hampton has stated a claim for breach of express warranty. To recover on such a claim, "a party must show that a warranty exists, the warranty was breached, and that the breach was the proximate cause of the loss suffered." *Collins Radio Co. of Dallas, Tex. v. Bell*, 1980 OK CIV APP 57, 623 P.2d 1039, 1052. Mr. Hampton alleged the warranty formed the basis of the bargain between himself and GM and that the Oil Consumption Defect is a covered vehicle defect. He further alleged that GM breached the warranty by failing and/or refusing to repair the Oil Consumption Defect. Finally, he alleges financial loss as a result of this breach. Mr. Hampton has stated a claim for breach of express warranty.

### III.   Implied Warranty.

GM asserts the claim for breach of the implied warranty of merchantability should be dismissed for two reasons, arguing that the claim (1) is untimely and (2) fails on the merits.

#### A. Timeliness.

A claim for breach of implied warranty is subject to a five-year statute of limitations. Okla. Stat. tit. 12A, § 2-725. Mr. Hampton purchased his vehicle on February 26, 2013, and the present

action was filed on August 20, 2021. GM consequently seeks dismissal of the claim as untimely. The Oklahoma Supreme Court, however, has recognized "the statute of limitations may be tolled if the plaintiff can show the defendant fraudulently concealed the cause of action." *Morgan v. State Farm Mut. Auto. Ins. Co.*, 2021 OK 27, ¶ 33, 488 P.3d 743, 753. This rule prevents a defendant from taking advantage of a wrong he or she perpetrated. *Masquat v. DaimlerChrysler Corp.*, 2008 OK 67, ¶ 18, 195 P.3d 48, 54.

Mr. Hampton expressly alleges that GM was aware of the Oil Consumption Defect and concealed it from him. In 2010, the GM investigative team produced its "executive report" on oil consumption in Generation IV Engines, and GM began issuing technical service bulletins to its dealers which explicitly addressed the issue of oil consumption in Generation IV Engines. GM did not reveal this information to consumers. Instead, GM concealed it. Mr. Hampton has pled a set of facts which, if taken as true, provide him a means of tolling the operative statute of limitations on the grounds of fraudulent concealment. Consequently, the court declines to dismiss the implied warranty claim as untimely. *See Kinzer v. Remington Arms Co., Inc.*, 2010 WL 11451121, at *5 (W.D. Okla. Sept. 1, 2010) ("At this juncture, the Court cannot say as a matter of law that Plaintiff's express warranty claim is barred by the statute of limitations because Plaintiff may attempt to establish fraudulent concealment of the defect[.]").

### B. Merits.

GM next asserts Mr. Hampton has failed to state a claim for breach of the implied warranty of merchantability because he did not allege his vehicle was unfit to provide transportation. Under Oklahoma law, "a warranty that the goods shall be merchantable is implied in a contract for their sale[.]" Okla. Stat. tit. 12A, § 2-314. A product is "merchantable" under Oklahoma law when it operates for its "ordinary purpose." *Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1288 (10th Cir. 2013);

7

Okla. Stat. tit. 12A, § 2-314. GM claims Mr. Hampton's vehicle was merchantable as a matter of law merely because he was able to successfully drive it. Yet, no Oklahoma law is cited for the proposition that a vehicle is merchantable so long as it can physically move. And indeed, a similar argument has been elsewhere rejected. *In re Gen. Motors Corp.*, 2005 WL 1924331, at *2 (W.D. Okla. Aug. 8, 2005) (denying motion to dismiss breach of implied warranty claim when "GM argue[d] that the plaintiffs' implied warranty claim is undermined by their failure to allege that their engines have failed in any way or are unfit for transportation.").

Mr. Hampton alleges his vehicle requires an improperly high quantity of oil that far exceeds industry standards for reasonable consumption. He further alleges he has consistently been required to add two quarts of oil to his vehicle in between regular oil changes. As alleged, his vehicle does not operate for its ordinary purpose but instead requires additional, out of the ordinary, maintenance. As such, Mr. Hampton has stated a claim for breach of the implied warranty of merchantability.

**IV.   Fraudulent Concealment.**

GM asserts the claim for fraudulent concealment should be dismissed for two reasons, arguing that the claim (1) does not satisfy the pleading requirements of Federal Rule of Civil Procedure 9(b) and (2) fails on its merits.

**A.   Federal Rule of Civil Procedure 9(b).**

Pursuant to Federal Rule of Civil Procedure 9(b), "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." The complaining party must "set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *Koch v. Koch Indus., Inc.*, 203

F.3d 1202, 1236 (10th Cir. 2000). The purpose behind the rule is "to afford defendant fair notice of plaintiff's claims and the factual ground upon which they are based." *Id*.

Mr. Hampton pled fraud here with sufficient particularity. He alleged that prior to purchasing the vehicle in 2013, he spoke with a sales representative at Dunn County Chevrolet in Eufaula, Oklahoma, and saw commercials which promoted the vehicle's reliability and durability. He further alleged that GM has known of the Oil Consumption Defect and resulting engine damage since 2008 but did not disclose it prior to the time of sale. GM has fair notice of Mr. Hampton's claims and the factual grounds on which they are based. Mr. Hampton has satisfied the heightened pleading standard in Fed. R. Civ. P. 9(b).

### B. Merits.

GM next asserts Mr. Hampton has failed to state a claim for fraudulent concealment because he did not allege GM had pre-sale knowledge of the defect or that GM had a duty to disclose it. Under Oklahoma law, fraud occurs where one conceals facts which, under the circumstances, should be disclosed. *Varn v. Maloney*, 1973 OK 133, 516 P.2d 1328, 1332. While the circumstances surrounding fraud must be stated with particularity, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

Mr. Hampton sufficiently alleged GM had pre-sale knowledge of a defect. Engineers began investigating the Oil Consumption Defect in at least 2008, when it was determined the piston rings were prematurely failing and causing excessive oil consumption. On January 8, 2010, the GM investigative team produced its "executive report" on oil consumption in Generation IV Engines. Then beginning in 2010, GM issued technical service bulletins to its dealers which explicitly

addressed the issue of oil consumption in Generation IV Engines. Finally, in 2012, GM generated a "problem investigation report" regarding oil consumption in Generation IV Engines.

The parties dispute whether knowledge in the possession of Old GM can be imputed to GM after GM emerged from the bankruptcy on July 10, 2009. The court need not resolve this issue now. Even assuming no knowledge from Old GM may be imputed to GM, GM still had pre-sale knowledge of the Oil Consumption Defect. Mr. Hampton expressly pled such knowledge and supported the allegation with specific facts. The "executive report" and technical service bulletins regarding the Oil Consumption Defect were issued in 2010 (after the inception of GM) and Mr. Hampton purchased his vehicle in 2013. At the time of purchase, therefore, GM was aware of the Oil Consumption Defect.

Mr. Hampton also sufficiently alleged GM had a duty to disclose. He expressly alleged such a duty and also supported it with factual averments. GM claims the duty to disclose generally exists only where the parties share a special relationship, such as a fiduciary relationship. Fraud, however, may occur:

> where one undertakes to speak and conveys only partial information to the other party. Under Oklahoma law, a duty to speak may arise from partial disclosure if, under the circumstances, partial disclosure is misleading. One conveying a false impression by the disclosure of some facts and the concealment of others is guilty of fraud even though his statement is true as far as it goes, since concealment is in effect a false representation that what is disclosed is the whole truth.

*Roberts Ranch Co. v. Exxon Corp.*, 43 F. Supp. 2d 1252, 1259, n.12 (W.D. Okla. 1997) (citing *Uptegraft v. Dome Petroleum Corp.*, 764 P.2d 1350 (Okla. 1988)). Thus, the duty to disclose arises where a party conveys only partial information in a misleading manner. *Id*. Mr. Hampton alleges he spoke about the vehicle with a sales representative at Dunn County Chevrolet at a time when GM had knowledge of the Oil Consumption Defect. By disclosing some information about the

vehicle, GM arguably had a duty to disclose the Oil Consumption Defect. Mr. Hampton has stated a claim for fraudulent concealment.

### V.     Oklahoma Consumer Protection Act.

GM next asserts Mr. Hampton failed to adequately plead a violation of the Oklahoma Consumer Protection Act, Okla. Stat. tit. 15, § 751 *et seq*. ("OCPA"). To succeed in a private right of action under the OCPA, a plaintiff must establish: (1) that the defendant engaged in an "unlawful practice"; (2) that the challenged practice occurred in the course of defendant's business; (3) that the plaintiff, as a consumer, suffered an injury in fact; and (4) that the challenged practice caused the plaintiff's injury. *Patterson v. Beall*, 2000 OK 92, ¶ 30, 19 P.3d 839, 846. Mr. Hampton sufficiently pled all elements.

First, GM engaged in an unlawful practice. Those practices deemed unlawful are outlined in Okla. Stat. tit. 15, § 753 and include "deceptive trade practices." A "deceptive trade practice" is a "misrepresentation, omission or other practice that has deceived or could reasonably be expected to deceive or mislead a person to the detriment of that person." Okla. Stat. tit. 15, § 752(13). Mr. Hampton alleged GM knew of the Oil Consumption Defect but failed to disclose it despite touting the reliability and durability of the Generation IV Engines. Second, the manufacture and sale of vehicles are indisputably in the course of GM's business. Third, Mr. Hampton suffered harm in the form of financial injury. And finally, GM's failure to disclose the Oil Consumption Defect caused that injury. Had GM disclosed the Oil Consumption Defect, Mr. Hampton would not have purchased the vehicle or would have paid less for it.

GM also argues Mr. Hampton failed to allege it had knowledge of the Oil Consumption Defect at the time of the sale. As noted above, however, the "executive report" and technical

service bulletins regarding the Oil Consumption Defect were issued in 2010, and Mr. Hampton purchased his vehicle in 2013. He has stated a claim for violation of the OCPA.[1]

### VI. Unjust Enrichment.

Lastly, GM asserts Mr. Hampton failed to state a claim for unjust enrichment because it is foreclosed by the claim for breach of express warranty. It is true that a party cannot recover on a claim for unjust enrichment when it has an adequate remedy at law. *Am. Biomedical Grp., Inc. v. Techtrol, Inc.*, 2016 OK 55, ¶ 27, 374 P.3d 820, 828. Under Fed. R. Civ. P. 8(d)(2), however, "[a] party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones." Mr. Hampton may allege a valid warranty exists and alternatively pursue unjust enrichment should the warranty claim fail. Indeed, GM has argued here the warranty is inapplicable to the defect Mr. Hampton identified. While Mr. Hampton cannot recover under both theories, he is entitled to assert them. *See Burlington N. & Santa Fe Ry. Co. v. Grant*, 505 F.3d 1013, 1030 (10th Cir. 2007) ("[W]hile BNSF is not entitled to a double recovery for the same injuries, it is entitled to pursue its unjust enrichment claim as an alternative claim.").

### CONCLUSION

For the reasons set forth above, the Motion to Dismiss filed by Defendant General Motors, LLC [Dkt. No. 7], is **DENIED**.

**IT IS SO ORDERED** this 28th day of September, 2022.

_____
**THE HONORABLE RONALD A. WHITE**
**UNITED STATES DISTRICT JUDGE**
**EASTERN DISTRICT OF OKLAHOMA**

---

[1] In a footnote, GM asserts Mr. Hampton failed to plead facts suggesting it had acted with reckless disregard for the rights of others and therefore punitive damages may not be recovered from the OCPA claim. Mr. Hampton, however, alleges GM was aware of the Oil Consumption Defect, had a duty to disclose it, but instead intentionally concealed it from consumers. At this stage in the proceedings, the court does not conclude that punitive damages may not be recovered.