## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

DURWIN HAMPTON,            )
                          )
        Plaintiff,        )
                          )
    v.                    )        Case No. 21-CV-250-RAW
                          )
GENERAL MOTORS LLC,       )
                          )
        Defendant.        )

## REPORT AND RECOMMENDATION

This matter comes before the Court on motion by Plaintiff Durwin Hampton for class certification. The Court referred this motion for Report and Recommendation on February 27, 2023, pursuant to 28 U.S.C. § 636(b)(1). For the reasons set forth below, the undersigned Magistrate Judge finds that Plaintiff's Motion for Class Certification [Docket No. 54] should be GRANTED IN PART and DENIED IN PART.

### BACKGROUND/PROCEDURAL HISTORY

Plaintiff Durwin Hampton filed a Class Action Complaint on August 20, 2021 [Docket Nos. 1-2]. Individually and pursuant to Fed. R. Civ. P. 23(a), Hampton asserts he is acting as representative of a class defined as: all current and former owners or lessees of a Class Vehicle (as defined herein) that was purchased or leased in the State of Oklahoma. Docket No. 2, p. 61, ¶ 189 (with certain exclusions identified at ¶ 190). Plaintiff alleges that the Generation IV 5.3 liter V8 Vortec 5300 LC9 ("LC9") engine suffers from an oil-consumption defect, of which the primary cause is defective piston rings installed by Defendant. *Id*., pp. 2-3, ¶¶ 5, 7-8. Plaintiff's Class Action Complaint sets out

the following five causes of action: (1) violations of the Oklahoma Consumer Protection Act ("OCPA"), 15 Okla. Stat. § 751 *et seq*.; (2) breach of express warranty, in violation of 12A Okla. Stat. §§ 2-313 & 2A-210; (3) breach of implied warranty of merchantability, 12A Okla. Stat. §§ 2-314 & 2A-212; (4) fraudulent concealment; and (5) unjust enrichment. Plaintiff no longer seeks certification of the fraudulent concealment claim (Count IV), and moves for certification on his OCPA (Count 1), implied warranty of merchantability (Count III), and unjust enrichment claims (Count V) as to the following class:

> All current owners or lessees of a 2011-2014 Chevrolet Avalanche, 2011-2014 Chevrolet Silverado, 2011-2014 Chevrolet Suburban, 2011-2014 Chevrolet Tahoe, 2011-2014 GMC Sierra, 2011-2014 GMC Yukon, and 2011-2014 GMC Yukon XL manufactured on or after February 10, 2011, that was equipped with a Generation IV 5.3 liter V8 Vortec 5300 LC9 [hereinafter, "the LC9 engine"] engine that was purchased or leased in the State of Oklahoma.

Docket No. 54, p. 1. For the remaining breach of express warranty claim (Count II), Plaintiff moves to certify the following class:

> All current owners or lessees of a 2012-2014 Chevrolet Avalanche, 2012-2014 Chevrolet Silverado, 2012-2014 Chevrolet Suburban, 2012-2014 Chevrolet Tahoe, 2012-2014 GMC Sierra, 2012-2014 GMC Yukon, and 2012-2014 GMC Yukon XL manufactured on or after February 10, 2011, that was equipped with a Generation IV 5.3 liter V8 Vortec 5300 LC9 [hereinafter, "the LC9 engine"] engine that was purchased or leased in the State of Oklahoma.

Docket No. 54, pp. 1-2. Following resolution of disputes regarding the expert witness testimony in this case, Docket Nos. 98, 102, 105 & 113, the undersigned Magistrate Judge held a Class Certification hearing on March 11, 2024 [Docket Nos. 115-116].

## I.    STANDARD FOR CLASS CERTIFICATION

"'The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Wallace B. Roderick Revocable Living Trust v. XTO Energy, Inc.*, 725 F.3d 1213, 1217 (10th Cir. 2013) (quoting *Wal–Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 348 (2011)).  Fed. R. Civ. P. 23(a) sets out four prerequisites for a class action:

> (1) the class is so *numerous* that joinder of all members is impracticable [**numerosity**];
> (2) there are questions of law or fact *common to the class* [**commonality**];
> (3) the claims or defenses of the representative parties are *typical* of the claims or defenses of the class [**typicality**]; and
> (4) the representative parties will fairly and *adequately protect* the interests of the class [**adequacy**].

Additionally, "'[t]he party must also satisfy through evidentiary proof at least one of the provisions of Rule 23(b).'" *Roderick*, 725 F.3d at 1217 (quoting *Comcast Corp. v. Behrend,* 569 U.S. 27, 33 (2013)).  Here, Hampton seeks certification under Rule 23(b)(3), which additionally requires the Court "to find that: (1) 'questions of law or fact common to class members predominate over any questions affecting only individual members,' (**predominance**); and (2) 'a class action is superior to other available methods for fairly and efficiently adjudicating the controversy' (**superiority**)." *Id.*, 725 F.3d at 1217 (citing Fed. R. Civ. P. 23(b)).  "[M]atters pertinent to these [23(b)(3)] findings include:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
(D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

A class action "may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982). The Tenth Circuit states that this is "more than a pleading standard," *Roderick*, 725 F.3d at 1219 (citation omitted), characterizing it as a "strict burden of proof," *Tabor v. Hilti*, 703 F.3d 1206, 1228 (10th Cir. 2013), that "demands a rigorous analysis." *Roderick*, 725 F.3d at 1219 (quotation omitted). However, "[a]lthough we have cautioned that a court's class-certification analysis must be 'rigorous' and may 'entail some overlap with the merits of the plaintiff's underlying claim,' Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 465-466 (2013) (quoting *Wal-Mart,* 564 U.S. at 351 (internal quotation marks omitted)); *see also Harper v. C.R. England, Inc.*, 746 Fed. Appx. 712, 721-722 (10th Cir. 2018) ("Brevity may be the soul of wit, but it isn't the soul of rigorous analysis. Such a short discussion of class certification . . . leaves us without a sufficient record to review."). Consideration of the merits is therefore permitted "only to the extent []that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen*, 568 U.S. at 466; *see also DG ex rel. Stricklin v. Devaughn,* 594 F.3d 1188, 1194 (10th Cir. 2010) ("While the court should not pass judgment on the merits of the case at the class certification stage, it must conduct its own rigorous analysis, to ensure Rule 23's

requirements are met.") (quotation omitted).  The Court thus proceeds to address with rigor the four factors in Rule 23(a), along with the two additional factors in Rule 23(b)(2), delving into the merits only as necessary when the merits are intertwined with the class-certification analysis.

"Plaintiff, of course, bears the burden of fulfilling all these requirements. When ruling on a class certification motion, the Court need not accept either party's representations, but must independently find the relevant facts by a preponderance of the evidence." *Hill v. Aspen Contracting, Inc.*, 2021 WL 2662296, at \*2 (D.N.M. Feb. 22, 2021) (citing *Payne v. Tri-State CareFlight, LLC*, 328 F.R.D. 601, 620 (D.N.M. 2018)). "Therefore, the Court will find facts for the purposes of class certification by the preponderance of the evidence but will allow the parties to challenge these findings during the subsequent merits stages of this case. This approach is analogous to preliminary injunction practice, and many circuits have endorsed it.  In taking evidence on the question of class certification, the Federal Rules of Evidence apply, albeit in a relaxed fashion." *Id.*, 2021 WL 2662296, at \*2 (citations omitted).

## II.    ANALYSIS

Plaintiff contends that Rule 23 class certification on its four remaining causes of action should be granted.  Defendant argues Plaintiff fails to satisfy all but one of Rule 23(a)'s four requirements, as well as Rule 23(b)'s requirements for predominance and superiority.  Courts must independently consider, however, each of the four Rule 23(a) requirements, as well as the two Rule 23(b)(3) requirements, to determine if certification is appropriate given the current legal landscape.  Although Defendant states in its briefing

that it is challenging all but the "numerosity" factor, the arguments largely center on or are subsumed under the commonality/predominance factors, so the Court's focus is largely on those two factors, with particular attention paid to predominance. *See, e.g.*, *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 609 (1997) ("Rule 23(a)(2)'s 'commonality' requirement is [generally] subsumed under, or superseded by, the more stringent Rule 23(b)(3) requirement that questions common to the class 'predominate over' other questions.").

### A. Rule 23(a)(1) - Numerosity

"[T]here is no set formula to determine if the class is so numerous that it should be so certified." *Trevizo v. Adams*, 455 F.3d 1155, 1162 (10th Cir. 2006) (quotation omitted). Defendant does not challenge the numerosity requirement, but the undersigned Magistrate Judge nevertheless finds the numerosity prerequisite is met here, where Defendant sold over 50,000 LC9s in model year 2011 through 2014 vehicles in Oklahoma. *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999) ("Although the number of members in a proposed class is not determinative of whether joinder is impracticable, the size of the class in this case—100 to 150 members—is within the range that generally satisfies the numerosity requirement.") (citing, *inter alia*, 1 Newberg on Class Actions § 3.05, at 3-25 (3d ed. 1992) (suggesting that any class consisting of more than forty members "should raise a presumption that joinder is impracticable")). *Cf. Shook v. El Paso Cnty.*, 386 F.3d 963, 972 (10th Cir. 2004) ("The district court erred by not specifically addressing the traditional Rule 23 factors in denying class certification.").

### B. Rule 23(a)(3) - Typicality

To certify a class action, "the claims or defenses of the representative parties [must

be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality, commonality, and adequacy all "tend to merge" in serving "as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Wal-Mart*, 564 U.S. at 349 n.5. "'[D]iffering fact situations of class members do not defeat typicality under Rule 23(a)(3) so long as the claims of the class representative and class members are based on the same legal or remedial theory.'" *Colorado Cross Disability Coal. v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1216 (10th Cir. 2014) (quoting *Adamson v. Bowen,* 855 F.2d 668, 676 (10th Cir. 1988)).

Plaintiff contends that this factor is met because every Class Member would have the same four legal theories, (violations of the OCPA, breach of express warranty, breach of implied warranty of merchantability, and unjust enrichment), and that the legal claims of the representative are "typical of the claims . . . of the class." Rule 23(a)(3). "[T]ypicality exists where, as here, all class members are at risk of being subjected to the same harmful practices, regardless of any class member's individual circumstances." *Stricklin*, 594 F.3d at 1199. Defendant contends that Plaintiff's claims are not typical because individual owners acquired their vehicles in different ways, *i.e.*, new, used, leasing, gift, etc., and Plaintiff modified his own engine. Additionally, Defendant contends that individual inquiries as to damages and timeliness preclude typicality. Both damages and timeliness are discussed below.

The undersigned Magistrate Judge finds that although the Class Representative and each potential Class Member have differing backgrounds, they all have the same common legal theory, their interests are not "significantly antagonistic" to each other, and they are all "at risk of being subjected to the same harmful practices, regardless of any class member's individual circumstances." *Id.*, 594 F.3d at 1199 ("Due to the common risk of harm and the common underlying legal theory for asserting that risk, the district court acted within its discretion to find that typicality was satisfied."). Typicality is therefore satisfied here. *See also Siqueiros v. Gen. Motors LLC*, 2021 WL 2115400, at *23-24 (N.D. Cal. May 25, 2021), *on reconsideration in part*, 2021 WL 3291837 (N.D. Cal. Aug. 2, 2021) (rejecting the same typicality arguments made by Defendant as to "the same LC9 engine with the allegedly defective pistons" for other states, and concluding, "[t]he class representatives' claims are therefore typical of those of the class because they all own or lease vehicles equipped with the same LC9 engine that allegedly suffers from an identical defect. The interests of the representatives are sufficiently aligned with the interests of the class."); *White v. Gen. Motors LLC*, 2023 WL 3278460, at *11 (D. Colo. May 5, 2023) ("At bottom, the claims of all class members, including Plaintiff White, are premised on the same theory of recovery: that Defendant sold them vehicles, specified in the class definition, containing a 'Generation IV 5.3-liter V8 Vortec 5300 LC9 engine' with defective pistons. . . . And to the extent that other class members' claims may not be subject to the relevant statute of limitations, this is insufficient—contrary to Defendant's

argument—to defeat typicality[.]"), *reconsideration denied*, 2023 WL 4628438 (D. Colo. June 30, 2023).[1]

C.  *Rule – 23(a)(4) - Adequacy of Representation*

"Determining adequacy of representation turns on two questions: (1) whether named plaintiffs and their counsel have any conflicts of interest with other class members and (2) whether named plaintiffs and their counsel will vigorously prosecute the action on behalf of the class."  *In re Motor Fuel Temperature Sales Pracs. Litig.*, 292 F.R.D. 652, 671 (D. Kan. 2013) (citing, *inter alia*, *E. Tex. Motor Freight Sys., Inc. v. Rodriguez,* 431 U.S. 395, 403 (1977)).  Plaintiff asserts there are no apparent conflicts between the potential class members and either the representative or the named Counsel.  Additionally, they assert they are qualified to prosecute the claims on behalf of Plaintiff and the proposed Class.  The Court further notes that Counsel previously represented similar classes and been found adequate.  *See, e.g.*, *Siqueiros*, 2021 WL 2115400 at *24; *White*, 2023 WL 3278460, at *12.  The Court is satisfied that Plaintiff and its counsel can "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  As (i) there is no apparent conflict, (ii) Plaintiff is capable of acting as a class representative, and (iii) Plaintiff's attorneys are qualified to prosecute these claims, adequacy is met.

---

[1] As demonstrated throughout by reference to similar cases throughout the country brought against Defendant on some or all of these enumerated claims, the attorneys for all parties in this case have been litigating this question for over eight years.  While assuredly knowledgeable on these issues and claims, the parties have likewise grown accustomed to recycling arguments, briefs, and even discovery, with few adjustments on each side for the specifics of the jurisdiction and proposed class.

### D. Rule 23(a)(2) - Commonality

"Rule 23(a)(2) is disjunctive: a plaintiff may satisfy its commonality requirement if 'there are questions of law or fact common to the class.'" *White*, 2023 WL 3278460, at *9 (D. Colo. May 5, 2023) (citing Fed. R. Civ. P. 23(a)(2)); *Milonas v. Williams*, 691 F.2d 931, 938 (10th Cir. 1982) ("In determining whether the . . . commonality requirement[ ] ha[s] been fulfilled, either common questions of law or fact presented by the class will be deemed sufficient.")).  Under this factor, Plaintiff must demonstrate that the class claims "depend upon a common contention" that is "of such a nature that it is capable of classwide resolution," meaning "that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Wal-Mart*, 564 U.S. at 350. The most important aspect of commonality is not "common questions," but "the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation."  *Id.* at 350 (quotation omitted).  "[F]or purposes of Rule 23(a)(2), [e]ven a single common question will do."  *Id.* at 359 (quotation omitted) ("We consider dissimilarities not in order to determine (as Rule 23(b)(3) requires) whether common questions *predominate,* but in order to determine (as Rule 23(a)(2) requires) whether there *is* '[e]ven a single [common] question.'"

The Supreme Court further explained, "[a]n individual question is one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." *Tyson Foods*, 577 U.S. at 453 (quotation omitted). Important to this and every

other factor, the Court again notes that "[m]erits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen*, 568 U.S. at 466.

Plaintiff identifies the overarching common issue as whether an alleged defective piston ring caused excessive oil consumption in the engine, asserting that evidence of a class-wide defect is sufficient to establish the commonality requirement. *See, e.g.*, *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1172 (9th Cir. 2010) ("Appellants easily satisfy the commonality requirement. The claims of all prospective class members involve the same alleged defect, covered by the same warranty, and found in vehicles of the same make and model."). Plaintiff further notes that the question of relief and/or damages is likewise common. Defendant acknowledges the universe of arguments, but contends that these questions are not susceptible of generalized proof or answers in "one stroke" as required in *Wal-Mart* because Defendant contends there is no defect, much less a class-wide defect, and there are a "multitude" of individual issues requiring individualized proof.

As stated above, "even a single common question will do." *Wal-Mart*, 564 U.S. at 359 (internal quotations omitted), so the undersigned Magistrate Judge finds the commonality factor is generally established. *In re FCA US LLC Monostable Elec. Gearshift Litig.*, 334 F.R.D. 96, 105 (E.D. Mich. 2019), *clarified on denial of reconsideration*, 340 F.R.D. 251 (E.D. Mich. 2022) ("Although the plaintiffs have alleged a variety of legal theories under the laws of several different states, recovery under all of them demands proof of a defect in the vehicles as a result of the shifters. That is

enough[.]").  As previously noted, however, "Rule 23(a)(2)'s 'commonality' requirement is [generally] subsumed under, or superseded by, the more stringent Rule 23(b)(3) requirement that questions common to the class 'predominate over' other questions." *Amchem*, 521 U.S. at 609.  As in *White*, "either a piston ring defect existed in the Generation IV engines at the time the Class Vehicles were sold or leased, or it did not. Either that alleged defect rendered the Class Vehicles unmerchantable or it did not.  These questions are likely to 'drive the resolution of the litigation.'"  *White*, 2023 WL 3278460, at *14.  The "commonality" factor—and the related arguments presented by Defendant— is thus more fully assessed below in the context of and in combination with the predominance factor.

   *E.  Rule 23(b)(3) - Predominance*

   Under Rule 23(b)(3), a class action may be certified if "[1] the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members [**predominance**], and [2] that a class action is superior to other available methods [**superiority**][.]" (emphasis added).  "Rule 23(b)(3) includes a nonexhaustive list of factors pertinent to a court's close look at the predominance and superiority criteria," *Amchem*, 521 U.S. at 615, such that "matters pertinent to these findings" are:

   (A)   the class members' interests in individually controlling the prosecution or
         defense of separate actions;
   (B)   the extent and nature of any litigation concerning the controversy already begun
         by or against class members;
   (C)   the desirability or undesirability of concentrating the litigation of the claims in
         the particular forum; and
   (D)   the likely difficulties in managing a class action.

-12-

Rule 23(b)(3).

First, "[t]o satisfy Rule 23(b)(3), a plaintiff must 'show that common questions subject to generalized, classwide proof *predominate* over individual questions.'" *Naylor Farms, Inc. v. Chaparral Energy, LLC*, 923 F.3d 779, 789 (10th Cir. 2019) (quoting *CGC Holding Co., LLC v. Broad and Cassel*, 773 F.3d 1076, 1087 (10th Cir. 2014); *see also Tyson Foods*, 577 U.S. at 453 ("An individual question is one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class[ ]wide proof.") (alteration in original) (quotation omitted). The predominance criterion, while similar to the commonality discussion above, is "far more demanding." *Amchem*, 521 U.S. at 623-624. "[P]redominance may be destroyed if individualized issues will overwhelm those questions common to the class[.]" *Roderick*, 725 F.3d at 1220. "Put differently, the predominance prong asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *In re SandRidge Energy, Inc. Sec. Litig.*, 2019 WL 4752268, at *6 (W.D. Okla. Sept. 30, 2019) (quotation omitted). "Thus, to determine whether a plaintiff can satisfy Rule 23(b)(3)'s predominance requirement, a court must first 'characterize the issues in the case as common or not, and then *weigh* which issues predominate.'" *Naylor Farms*, 923 F.3d at 789 (quoting *CGC Holding Co.*, 773 F.3d at 1087). "Predominance is ordinarily satisfied when plaintiffs have alleged a common course of conduct by the

-13-

defendant." *Hill v. Kaiser-Francis Oil Co.*, 2010 WL 2474051, at *6 (W.D. Okla. June 9, 2010), *order corrected on reconsideration*, 2010 WL 11451125 (W.D. Okla. Aug. 5, 2010) (correcting class definition). As discussed above, the Court characterizes the issues in this case as common; the remaining question is whether they predominate.

"Considering whether 'questions of law or fact common to class members predominate' begins, of course, with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011). In this case, Plaintiff alleges four causes of action: (1) violations of the OCPA (Count I), (2) breach of express warranty (Count II), (3) breach of implied warranty of merchantability (Count III), and (4) unjust enrichment (Count V). Plaintiff contends he set forth a prima facie showing for each cause of action. For each of the elements in these claims, Plaintiff asserts that no Class Members will testify or present evidence, and the evidence will not vary from member to member but will be susceptible of general, class-wide proof. Defendant challenges the evidence required for all four claims, contending that each requires individualized proof. "The predominance analysis is a pragmatic one. It is not a numerical test that identifies every issue in the suit as suitable for either common or individual treatment and determines whether common questions predominate by examining the resulting balance on the scale." 2 Newberg and Rubenstein on Class Actions § 4:51(5) (6th ed.).

**Standing**. Before addressing the Rule 23 factors, Defendant first contends that Plaintiff and all putative class members cannot establish Article III standing because: (1) the Proposed Class consists of members who never experienced a defect, (2) less than 1% of the relevant vehicles needed new pistons and rings due to excess oil consumption

during the 5-year/100,000-mile warranty period, and (3) those who did received a free replacement. Defendant further challenges Plaintiff's contention that overpaying for the vehicle is sufficient for standing. Defendant contends that narrowing the class to those vehicles that actually experienced excessive oil consumption would also defeat class certification because it would require exploration into individualized issues.

"[P]laintiffs are always required to demonstrate that their alleged injuries are 'apt to be redressed by a remedy the court is prepared to give.'" *Vallario v. Vandehey*, 554 F.3d 1259, 1268 n.7 (10th Cir. 2009) (quoting *Latino Officers Ass'n v. Safir*, 170 F.3d 167, 170 (2d Cir. 1999); (citing *Bd. of County Comm'rs v. Geringer*, 297 F.3d 1108, 1112 (10th Cir. 2002) ("[C]onstitutional standing requires a court to ask not only whether an injury has occurred, but whether the injury that has occurred may serve as the basis for a legal remedy in the federal courts.") (quotation omitted). "[U]nder Article III, a federal court may resolve only 'a real controversy with real impact on real persons.'" *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021) (quoting *American Legion* v. *American Humanist Assn.*, 588 U. S. 29, 87 (2019) (Gorsuch, J., concurring). "Only those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court." *Id.*, at 427. "[C]ertain harms readily qualify as concrete injuries under Article III. The most obvious are traditional tangible harms, such as physical harms and monetary harms. If a defendant has caused physical or monetary injury to the plaintiff, the plaintiff has suffered a concrete injury in fact under Article III." *Id.* at 425.

Plaintiff alleges that the injury to himself and all putative class members occurred on the day of the sale – an inflated price for a vehicle containing a defect. This is sufficient

to meet the requirement of an injury-in-fact. *Meier v. Chesapeake Operating L.L.C.*, 324 F. Supp. 3d 1207, 1213 (W.D. Okla. 2018), *aff'd*, 778 Fed. Appx. 561 (10th Cir. 2019) ("By alleging an economic injury consisting of payment of insurance premiums, which may or may not be recoverable under the theories of liability asserted, plaintiffs have satisfied the injury-in-fact requirement.") (citing 15 James WM. Moore, *et al.*, Moore's Federal Practice § 101.40[5][6] (3d. ed. 2018) ("The injury-in-fact necessary to support standing may be an economic injury.")). *See also Hampton v. Gen. Motors, LLC*, 631 F. Supp. 3d 1041, 1046 (E.D. Okla. 2022) ("Mr. Hampton suffered financial harm when he purchased a vehicle with the Oil Consumption Defect, and economic injury is sufficient for standing under Article III.") (citing *TransUnion*, 594 U.S. at 425) ("If a defendant has caused physical or monetary injury to the plaintiff, the plaintiff has suffered a concrete injury in fact under Article III."). Defendant is well-acquainted with the law on this subject, having repeatedly tried and failed with these arguments in numerous cases. *See, e.g.*, *White*, 2023 WL 3278460, at *4 ("But the Court agrees with Plaintiff White that alleged economic injuries—including forms of overpayment—are concrete[.]"); *Siqueiros v. Gen. Motors LLC*, 2021 WL 4061708, at *4 (N.D. Cal. Sept. 7, 2021) ("[T]he concrete injury here is the reduction in the Class Vehicle's monetary value, *not* the effects of the oil-consumption defect."); *Siqueiros v. Gen. Motors LLC*, 676 F. Supp. 3d 776, 824 (N.D. Cal. 2023) ("[T]he Court's previous rulings make clear that class members have Article III standing based on overpaying for an allegedly defective product. The Court's prior ruling stands, and the evidence of a classwide defect presented at trial, if anything, substantiates this Court's holding on standing."); *Riddell v. General Motors, LLC*, Case No. 20-254-

-16-

SNLJ, Docket No. 93, p. 7 (E.D. Mo. Feb. 28, 2024) ("The oil consumption at issue in this case results from 'inherent, premature piston ring wear' [Doc. 83 at 16], and plaintiffs contend—with support from defendant's documents—that the defect exists in all class engines. . . . As the *Siqueiros* court held, 'the law is clear that 'overpayment is a viable theory of economic injury' and that plaintiffs can satisfy the injury in fact requirement by showing that the defect caused them to overpay for their vehicles. . . . GM's challenge to Article III standing on the basis of a purported lack of injury is unavailing.'"). The undersigned Magistrate Judge is therefore satisfied that Plaintiff met his Article III standing burden at this stage. *White*, 2023 WL 3278460, at *5 ("In arguing otherwise, Defendant urges a narrowed interpretation of *TransUnion* and Article III that the Court—like others before it—rejects.") (citing *Siqueiros*, 2021 WL 4061708, at *4; *In re Evenflo Company*, 54 F.4th 28, 39 (1st Cir. 2022) ("[M]onetary harms such as those alleged here fall firmly on the real, concrete side of the divide.")).

**Ascertainability.** Many of Defendant's arguments relate to the question of ascertainability. "Notably, the Tenth Circuit Court of Appeals has not yet directly addressed whether, or to what extent, ascertainability is a requirement for class certification." *Smith v. LifeVantage Corp.*, 341 F.R.D. 82, 93 (D. Utah 2022). To what extent it becomes another element of the class certification analysis is unknown, but it is clear that questions surrounding the identifiability of a class will often arise in the context of numerosity and manageability, particularly in the context of Rule 12(b)(3) with regard to relevant difficulties providing notice to class members. *Id.* at 93 & n.75-78.

This Court previously favored the approach set forth by the Western District of Oklahoma: "first, that the class be defined with reference to objective criteria; and second, a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition." *Braver v. Northstar Alarm Servs., LLC*, 329 F.R.D. 320, 334 (W.D. Okla. 2018) (cited favorably *in Cline v. Sunoco, Inc. (R&M)*, 333 F.R.D. 676, 688 (E.D. Okla. 2019)). Here, both of those conditions appear to be readily met, despite protestations from Defendant. Plaintiff represents that the Class Vehicles in this case can readily be identified by Defendant's third-party organization, using vehicle registration records. This appears to be the common method used in other cases granting certification with similar or the same claims in other jurisdictions. *See, e.g.*, *Anderson Living Tr. v. Energen Res. Corp.*, 2020 WL 406365, at *3 (D.N.M. Jan. 24, 2020) ("The mechanics involved in finding a successive owner (and there is no reason to believe *all* owners of the 153 leases are successive owners) is not significant here, except to comment that the Court is not convinced the process would be as burdensome as Energen claims it would be. The Court cannot help but wonder how 'complicated' Energen would find it to identify a successive lease owner in order to recover an *overpayment* of royalty."); *see also Speerly v. Gen. Motors, LLC*, 343 F.R.D. 493, 522 (E.D. Mich. 2023) ("It is evident from the record that the classes are reasonably ascertainable from the detailed sale and warranty records and other associated public record information that disclose the ownership, service record, and state of registration of all class vehicles."). The Court can therefore ascertain the proposed class. *See also White*, 2023 WL 3278460, at *7 ("To the extent that Defendant argues the class as defined would impermissibly result in changes to its size—that the 'class

today will differ from the class that will get notice, which will differ again from the class at trial'—as a matter of its *ascertainability*, this is insufficient to demonstrate that the class is not defined with reference to objective criteria[.]") (citing *Hargrove v. Sleepy's LLC*, 974 F.3d 467, 469-470 (3rd Cir. 2020)); *Smith LifeVantage Corp.*, 341 F.R.D. at 96 ("The ascertainability requirement's first concern is that class members can be identified at some point . ...[t]he fact that the class may be temporarily over- or under-inclusive until [the point of determining liability] does not automatically preclude certification.") (footnotes omitted)).

**Timeliness.** Further, Defendant contends that all of Plaintiff's claims are time-barred, while Plaintiff asserts that the statute of limitations was tolled. The putative class names all current owners and lessees of the Class Vehicles manufactured on or after February 10, 2011. Plaintiff filed the Class Action Complaint in this case on August 20, 2021, well over ten years later, but contends that two doctrines, class action tolling[2] and fraudulent concealment, hinge on class-wide proof.

"In Oklahoma, the statute of limitations for breach of implied warranty [and express warranty] on a sale of goods is five years." *Jacks v. Vanderbilt Mortg. & Fin., Inc.*, 2016

---

[2] It is not clear that class action tolling applies here. Plaintiff in his Reply to the present motion asserts that it applies to the implied warranty claim because an Oklahoma Plaintiff in the California *Siqueiros* action asserted the same claim. *Siqueiros* was filed in December 2016, *Siqueiros v. General Motors LLC*, Case No. CIV-16-07244-EMC, Docket No. 2, which means that at least some of the identified class vehicles (manufactured on or after February 10, 2011) would not be included in tolling. Plaintiff does not acknowledge this problem nor has he proposed any modifications to the class based on this issue. The undersigned Magistrate Judge is thus not persuaded that class action tolling applies here, nor that it would accomplish Plaintiff's goals. Nevertheless, the undersigned Magistrate Judge proceeds on the basis of fraudulent concealment tolling, as further discussed.

WL 5720835, at *2 (W.D. Okla. Oct. 3, 2016) (citing 12A Okla. Stat. § 2-725(1) ("An action for breach of any contract for sale must be commenced within five (5) years after the cause of action has accrued. By the original agreement the parties may reduce the period of limitation to not less than one (1) year but may not extend it.")); *see also* 12 Okla. Stat. § 95(A). "OCPA and unjust enrichment claims are subject to a three-year statute of limitations." *Scott v. Coast Pro., Inc.*, 2021 WL 3354454, at *2 (W.D. Okla. Aug. 2, 2021) (citing 12 Okla. Stat. § 95(A)). The Court previously held in this case that the Oklahoma Supreme Court recognizes "'the statute of limitations may be tolled if the plaintiff can show the defendant fraudulently concealed the cause of action.'" *Hampton*, 631 F. Supp. 3d at 1047 (quoting *Morgan v. State Farm Mut. Auto. Ins. Co.*, 2021 OK 27, ¶ 33, 488 P.3d 743, 753). Based on the adoption of this doctrine, the Court declined to dismiss the implied warranty claim as untimely based on Plaintiff's allegations that as far back as 2010, "the GM investigative team produced its 'executive report' on oil consumption in Generation IV Engines, and GM began issuing technical service bulletins [TSB's] to its dealers which explicitly addressed the issue of oil consumption in Generation IV Engines. GM did not reveal this information to consumers. Instead, GM concealed it." *Id.* at 1047-1048; *see also Kinzer v. Remington Arms Co., Inc.*, 2010 WL 11451121, at *5 (W.D. Okla. Sept. 1, 2010) ("[T]he Oklahoma Supreme Court noted that the statute of limitations for warranty claims does not displace the common law regarding the tolling of the statute[, which means that Plaintiff] may benefit from its application.") (citing 12A Okla. Stat. tit. § 2-725(4); *Masquat v. DaimlerChrysler Corp.*, 2008 OK 67, ¶ 18, 195 P.3d 48, 54).

Defendant contends that questions of timeliness nevertheless present individualized questions, contingent on when and how each class member discovered an alleged defect and whether he or she acted with diligence in responding to that information. Plaintiff makes clear, however, that the common question is whether anyone could have discovered the alleged defect—which GM still denies—from the symptoms in this case. In support, Plaintiff points to common evidence including GM's TSB's; a "Red-X Report" from January 2009 concluding that oil consumption followed the piston ring assembly within this engine line, even after minor changes to the engine line; as well as emails and testimony from certain GM employees and engineers. *See, e.g.*, Docket No. 55, Ex. 1, pp. 286, 293-294, 300-304, 303-1018, 567-573, 575, 577, 579-582, 584-586.[3] As in *Riddell* and *Siqueiros*, "'There is no indication in the record that there were ways for the putative class members to discover the oil-consumption defect outside of GM's representations about it. The jury can conclude, in one stroke, whether the putative class members knew about the defect until the lawsuit was filed.'" *Riddell*, Docket No. 93, p. 12 (quoting *Siqueiros*, 2021 WL 2115400, at *22). Defendant's statute of limitations defense thus does

---

[3] Plaintiff labelled these with various exhibit numbers, but grouped all exhibits to its brief in support as one attachment, failing to follow this Court's basic Administrative Guide requirement, which states, "Exhibits may **NOT** be grouped together for uploading into the system. Each exhibit must be scanned and identified separately." OKED CM/ECF Administrative Guide, p. 23 (Revised July 2023). Additionally, the Table of Contents, Docket No. 55, Ex. 1, pp. 2-3, does not identify the actual document at the corresponding number, but is only labelled with what is presumably an internal document number, requiring the Court to check each document to see if it contains the information the Court is seeking. The undersigned Magistrate Judge thus refers to the page number where the exhibit is actually found through the Court's CM/ECF system, and admonishes Plaintiff that future failures to comply with the relevant rules may result in the document being stricken. Defendant, having committed the same error, is given the same admonishment. *See* Docket No. 59, Ex. 1.

not preclude class certification because the issue of whether fraudulent concealment tolling applies can be resolved in "one stroke[,]" *Wal-Mart*, 564 U.S. at 349-350, and is more appropriate for resolution at the summary judgment stage. *See, e.g.*, *White*, 2023 WL 4628438, at *6 n.9 ("[T]he *Siqueiros* court's interest in testing, post-trial, the defendant's statute of limitations theory does not disturb the Court's determination that Plaintiff White has met his certification burdens under Rule 23.") (citing *Siqueiros v. General Motors*, 2023 WL 3919462, at *33 (N.D. Cal. June 8, 2023)).

**Count I: OCPA Violations.** "'The OCPA was enacted to protect consumers from unfair and deceptive trade practices and,' to that end, 'provides a private right of action for aggrieved consumers.'" *Horton v. Bank of Am., N.A.*, 189 F. Supp. 3d 1286, 1291 (N.D. Okla. 2016) (quoting *Williams v. CSC Credit Servs., Inc.*, 2007 WL 1959219, at *1 (N.D. Okla. June 29, 2007) (citing *Patterson v. Beall*, 2000 OK 92, ¶¶ 27, 30, 19 P.3d 839, 846). "[T]he four elements of a consumer's private action under the OCPA are: (1) that the defendant engaged in an unlawful practice as defined at 15 O.S. (1991), § 753; (2) that the challenged practice occurred in the course of defendant's business; (3) that the plaintiff, as a consumer, suffered an injury in fact; and (4) that the challenged practice caused the plaintiff's injury." *Patterson*, 2000 OK 92, ¶ 30, 19 P.3d at 846. "Section 753 identifies thirty-two (32) different 'unlawful practices.'" *Horton*, 189 F. Supp. 3d at 1291 (citing 15 Okla. Stat. § 753). In § 753, subsection (21) declares unlawful "unfair or deceptive trade practice as defined in Section 752 of this title[.]" Under § 752, "'Deceptive trade practice' means a misrepresentation, omission or other practice that has deceived or could reasonably be expected to deceive or mislead a person to the detriment of that person. Such

a practice may occur before, during or after a consumer transaction is entered into and may be written or oral; [and] 'Unfair trade practice' means any practice which offends established public policy or if the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." 15 Okla. Stat. § 752 (13 & 14).

Plaintiff asserts that each element can be proven with common evidence because all Class Members were subject to Defendant's concealment of the alleged oil consumption defect in both marketing and selling the class vehicles, that all class members purchased defective vehicles, and that the alleged defect caused injuries to Plaintiff and the class members. Defendant cites no countervailing authority as to the above-listed elements, but nevertheless contends that Plaintiff omits the required element of reliance, which can only be established through individualized proof and therefore defeats predominance. *See Roberts v. C.R. England, Inc.*, 318 F.R.D. 457, 513 (D. Utah 2017) ("[T]he parties dispute whether reliance or causation—elements that vary from claim to claim—are individualized issues requiring evidence for each class member.").

> As the Tenth Circuit has recognized, "reliance is often a highly idiosyncratic issue that might require unique evidence from individual plaintiffs" and "present an impediment to the economies of time and scale that encourage class actions as an alternative to traditional litigation." But, as the Tenth Circuit explains, "that is not always the case."
> Sometimes issues of reliance can be disposed of on a classwide basis without individualized attention at trial. For example, where circumstantial evidence of reliance can be found through generalized, classwide proof, then common questions will predominate and class treatment is valuable in order to take advantage of the efficiencies essential to class actions. Under certain circumstances, therefore, it is beneficial to permit a commonsense inference of reliance applicable to the entire class to answer a predominating question as required by Rule 23.

*Huddleston v. John Christner Trucking, LLC*, 2020 WL 489181, at *17 (N.D. Okla. Jan. 30, 2020), *amended on reconsideration in part*, 2020 WL 6375163 (N.D. Okla. Oct. 26, 2020) (quoting *CGC Holding Co.*, 773 F.3d at 1089). It is not clear, however, that reliance is required for this claim. Defendant's primary case in support of this argument does not discuss the OCPA, but a justifiable reliance standard in other states' consumer protection laws. *See In re Gen. Motors Corp. "Piston Slap" Prod. Liab. Litig.*, 2006 WL 1049259, at *10 (W.D. Okla. Apr. 19, 2006) ("Some plaintiffs also will have to establish justifiable reliance to recover under their state consumer protection statutes[,]" referring to Pennsylvania law); *see also Cervantes v. CRST Int'l, Inc.*, 2022 WL 2130811, at *31 (N.D. Iowa June 14, 2022) ("[A]n objective standard like reasonable reliance lends itself much more easily to common questions—and thus, class-action resolution—than a subjective standard like justifiable reliance. Again, other cited cases examine other types of claims which also do not have a reliance element, much less a justifiable reliance element."). Notably, parties in other cases have agreed that reliance is not a required element under the OCPA, nor is there case law to support a finding to the contrary. *See, e.g.*, *In re Pharm. Indus. Average Wholesale Price Litig.*, 252 F.R.D. 83, 98 (D. Mass. 2008) ("The parties appear to agree that the following state statutes do not require the element of reliance:" citing, *inter alia*, Oklahoma, 15 Okla. Stat. § 751 et seq.); *see also Cervantes*, 2022 WL 2130811, at *29 (characterizing *Huddleston* as finding "reliance not an element, but part of causation analysis in Oklahoma Consumer Protection Act claim.") (citing 2020 WL 489181, at *17). The undersigned Magistrate Judge therefore finds that the OCPA does not have as an element the requirement of reliance, much less justifiable reliance.

-24-

The elements to establish a claim under the OCPA therefore appear to be capable of resolution on a class-wide basis, with common issues predominating over individual ones. "Contrary to the defendant's [GM's] position, class certification of consumer fraud claims in federal courts is not impractical or impossible but ready and routine." *Speerly*, 343 F.R.D. at 520. Here, "the typical proof of 'materiality' of a misstated or omitted fact for fraudulent concealment and statutory consumer fraud claims turns on consideration of the mindset of an objectively reasonable consumer deciding whether to buy the defendant's product." *Id*. at 520-521 (citing, *inter alia*, 15 Okla. Stat. § 715.13 ("'Deceptive trade practice' means a misrepresentation, omission or other practice that has deceived or could reasonably be expected to deceive or mislead a person to the detriment of that person."). "This common proof of materiality, along with the common elements noted above, will dominate the case on all the statutory and common law consumer fraud claims." *Id.* at 522.

**Count II: Breach of Express Warranty.** The express warranty language Plaintiff presents states:

> This warranty is for GM vehicles registered in the United States and normally operated in the United States or Canada, and is provided to the original and any subsequent owners of the vehicle during the warranty period. . . . The warranty covers repairs to correct any vehicle defect, not slight noise, vibrations, or other normal characteristics of the vehicle related to materials or workmanship occurring during the warranty period.

*See* Docket No. 55, Ex. 1, p. 934.[4] "To recover on a theory of breach of warranty a party must show that a warranty exists, the warranty was breached, and that the breach was the proximate cause of the loss suffered." *Collins Radio Co. of Dallas, Tex. v. Bell*, 1980 OK

---

[4] *See* FN 2, *supra*.

CIV APP 57, ¶ 40, 623 P.2d 1039, 1052. Defendant raises three arguments in their attempt to defeat this claim as to the proposed Class: (1) not all class members have GM Express Warranties, (2) breaches of the express warranty involve individual inquiries as to manifestation and an opportunity to repair, and (3) this claim involves individual inquiries as to reliance. Plaintiff agrees Defendant's first argument is a "reasonable criticism," but asserts it can be overcome by limiting the class to those who purchased new or certified preowned vehicles from Oklahoma dealerships.

Defendant next argues that Plaintiff must establish, for each class member, that the defect exists, the defect manifested prior to the expiration of the warranty and Defendant had an opportunity to repair the defect and failed to do so. *See Dinwiddie v. Suzuki Motor of Am., Inc.*, 111 F. Supp. 3d 1202, 1209 (W.D. Okla. 2015) ("Dinwiddie has not cited any persuasive authority in support of the proposition that a latent defect discovered outside a warranty's limitations extends that warranty[.]"). Plaintiff contends the defect was not latent, but in existence at the time of sale of the class vehicles and therefore the warranty was implicated upon purchase. The undersigned Magistrate Judge finds this appears to be a question of fact for the summary judgment stage, rather than predominance as it applies to class certification. *See, e.g., Speerly*, 343 F.R.D. at 523 ("'The Ninth Circuit reversed and remanded for class certification, holding that 'proof of the manifestation of a defect is not a prerequisite to class certification[,]' and that 'individual factors may affect premature tire wear, [but] they do not affect whether the vehicles were sold with an alignment defect.'") (quoting *In re Whirlpool Corp. Front-Loading Washer Products Liability Litigation*, 722 F.3d 838, 857 (6th Cir. 2013) (quoting *Wolin*, 617 F.3d at 1173). However,

because the undersigned Magistrate Judge finds next that a Plaintiff is required to show reliance for a claim for breach of express warranty, which requires individualized proof, class certification should be denied for this claim and this Proposed Class.

Under Oklahoma's common law, "[a]ny direct and positive affirmation of a matter of fact, as distinguished from a mere matter of opinion or judgment, made by the seller during the sale negotiations and as a part of the contract, designed by him to induce the action of the purchaser, and actually relied upon by the latter in making the purchase, will be deemed to be a warranty." *Woolsey v. Zieglar*, 1912 OK 303 (Syllabus), 123 P. 164. In 1961, Oklahoma adopted language from the Uniform Commercial Code ("UCC"), which states,

> (1) Express warranties by the seller are created as follows:
>         (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.
>         (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.
>         (c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

12A Okla. Stat. § 2-313. U.C.C. Comment 3 to this Section states, "In actual practice affirmations of fact made by the seller about the goods during a bargain are regarded as part of the description of those goods; hence no particular reliance on such statements need be shown in order to weave them into the fabric of the agreement. Rather, any fact which is to take such affirmations, once made, out of the agreement requires clear affirmative proof. The issue normally is one of fact."

-27-

The Tenth Circuit, however, in discussing the U.C.C. as adopted by Oklahoma, appears to have held that reliance remains a requirement even under the U.C.C.  *See Speed Fastners, Inc. v. Newsom,* 382 F.2d 395, 397 (10th Cir. 1967) (Because "[n]othing shows that the employer when purchasing the studs relied on any statement in the pamphlet, any promise, or any description of the product. . . . [T]he proof fails to establish an express warranty and the submission of that issue to the jury is prejudicial and reversible error."); *see also Alexander v. Smith & Nephew, P.L.C.*, 98 F. Supp. 2d 1310, 1321-1322 (N.D. Okla. 2000) ("Plaintiff's claim for breach of express warranty fails, because Plaintiff has submitted no evidence that Dr. Hayes relied on any of Defendant's representations.") (citation omitted); *Martin v. Ford Motor Co.*, 292 F.R.D. 252, 273 n.24 (E.D. Pa. 2013) ("As demonstrated by the *Alexander* case cited above, and also noted in the official comments to the Oklahoma Commercial Code, Oklahoma law arguably still requires a plaintiff to show reliance to prove breach of express warranty.") (citing *Woolsey*, 1912 OK 303, 123 P. 164).  In sum, a substantial body of Oklahoma case law, even after adoption of the U.C.C. holds, "[t]here can be no express warranty without reliance."  *Thompson v. Peters*, 1994 OK CIV APP 97, ¶ 3, 885 P.2d 686, 688.

Plaintiff nevertheless cites an Oklahoma Court of Civil Appeals decision that reaches the opposite conclusion.  "The U. C. C. does not require a buyer to prove that he relied on the assertions constituting a warranty when the warranty is express (s 2-313, comment 3) or is an implied warranty of merchantability (s 2-314)."  *Collins*, 1980 OK CIV APP 57, ¶ 45, 623 P.2d at 105; *see also Kinzer*, 2010 WL 11451121, at *1 ("Oklahoma does not require privity of contract in claims for breach of the implied warranty of

merchantability nor does it require a plaintiff to establish reliance on any express warranty.") (stated without supporting authority). *See also In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 972 (N.D. Cal. 2014) ("According to Ford, 'basis of the bargain' means that Plaintiffs must have been aware of and relied on the limited warranty prior to purchasing their vehicles—*i.e.*, without reliance, no express warranty claim is viable. The Court does not agree.") (addressing UCC § 2-313 & cmt. 3; Oklahoma law not at issue in this case).

While some states have found that reliance is not an element of an express warranty claim, it appears that Oklahoma, with the exception of *Collins*, has continued the requirement of reliance past the adoption of the UCC in 1961, and the Tenth Circuit holdings are binding precedent here. *See, e.g.*, *In re Gen. Motors Corp. Dex-Cool Prod. Liab. Litig.*, 241 F.R.D. 305, 320 (S.D. Ill. 2007) ("[I]t appears also that a significant number of other states in the proposed class require specific reliance on a seller's statements as a condition of recovery under [§] 2–313 of the UCC.) (citing *Speed Fastners,* 382 F.2d at 397) (applying Oklahoma law)); *see also Land v. Roper Corp.*, 531 F.2d 445, 448 (10th Cir. 1976) ("The warranty is not actionable in its absence. *Cf.* UCC § 2-313, Comment 3, which has been held to express an intent that the reliance requirement be continued.") (citing *Speed Fastners, Inc.* 382 F.2d at 397).

The undersigned Magistrate Judge agrees with Defendant that the element of reliance, required here, raises individual issues that predominate over the common issues in this case. Accordingly, the undersigned Magistrate Judge recommends denying class certification as to Plaintiff's claim for breach of express warranty.

**Count III:  Breach of Implied Warranty of Merchantability.**  "Under the UCC [and 12A Okla. Stat. § 2-314], '[t]o recover for a breach of the implied warranty of merchantability a plaintiff must prove: (1) a sale of goods by a merchant, (2) the goods were not 'merchantable' at the time of sale, (3) injury and damage to the plaintiff or his property proximately caused by the defective nature of the goods, and (4) appropriate notice of breach to the seller.'"  *Wells v. Johnson & Johnson*, 554 F. Supp. 3d 1207, 1213 (W.D. Okla. 2021) (quoting *Collins*, 1980 OK CIV APP 57, ¶ 43, 623 P.2d at 1053).  Under Oklahoma law, a warranty of merchantability is implied in every contract for the sale of goods.  12A Okla. Stat. tit. § 2-314.  A consumer may bring a claim for breach of warranty against the retailer *and* the manufacturer to recover the benefit of the bargain.  *Waggoner v. Town & Country Mobile Homes, Inc.,* 1990 OK 139, § 16, 808 P.2d 649, 652.  Additionally, because "a warranty of merchantability is implied in every contract for the sale of goods[, a] consumer may bring a claim for breach of warranty against . . . the manufacturer to recover the benefit of the bargain[, and] [t]he consumer has the burden to prove that the product was defective at the time it left the manufacturer's possession or control."  *Harrison v. Leviton Mfg. Co.*, 2006 WL 2990524, at *6 (N.D. Okla. Oct. 19, 2006) (citing, *inter alia*, 12A Okla. Stat. § 2-314).

Plaintiff contends there is a uniform defect in all class vehicles, and thus whether the defect exists and is significant enough to render them unmerchantable is for the jury to determine.  Defendant asserts Plaintiff identifies no common evidence to support classwide adjudication of merchantability.  Defendant alleges individualized issues predominate over common ones because there is significant variability among the putative class members'

experiences with repairs, and some have not even required repairs. Defendant cites a record that 99% of the engines did not need piston ring replacement prior to the expiration of the warranty, and further contends that Plaintiff's vehicle had a normal rate of oil consumption (which Plaintiff disputes), and thus that Plaintiff cannot show his vehicle, much less all vehicles experienced excess oil consumption or suffered a piston ring defect.

"A necessary part of every breach of warranty claim is that plaintiff suffer an actual loss that was proximately caused by defendant's breach of warranty." *Id.* (citing, *inter alia*, *American Fertilizer Specialists, Inc. v. Wood*, 1981 OK 116, ¶ 9, 635 P.2d 592, 595 ("Having established the existence of the warranty, the buyer has the added burden of proving that the warranty was broken and that the breach of the warranty was the proximate cause of the loss sustained."). Defendant thus asserts that these elements for this claim require actual manifestation of the defect itself, which involves individualized proof as to vehicle purchases, timing, and performance of the vehicles themselves. *See, e.g.*, *Harrison*, 2006 WL 2990524, at *6 (In *Briehl v. General Motors Corp*, 172 F.3d 623, at 626-628 (8th Cir. 1999), "[P]laintiffs amended their complaint to . . . pursue a class action based on a theory that putative class members could recover for an unmanifested injury. The court stated that '[w]here, as in this case, a product performs satisfactorily and never exhibits an alleged defect, no cause of action lies.' Plaintiff attempts to distinguish this case without success. He alleges that Leviton's receptacles are inherently defective and are likely to cause an injury, but he does not affirmatively state that he has suffered an injury."); *Dinwiddie*, 111 F. Supp. 3d at 1209 (noting that there was no authority to support a claim that a latent defect discovered outside a warranty's limitations period extends the

warranty); *"Piston Slap*," 2006 WL 1049259, at *10 (W.D. Okla. Apr. 19, 2006) ("Another predominance consideration is the existence of individualized defenses to the plaintiffs' claims, such as whether a plaintiff purchased his or her vehicle after the expiration of the warranty period, whether a plaintiff sought to have his or her vehicle repaired and then, whether it was repaired, or whether, if purchased used, the vehicle's price was discounted because of any audible engine noise on startup.").

As in *White*, the undersigned Magistrate Judge "agrees with Plaintiff [] that the issues his claims and this class action present are common. For instance, his implied warranty claim, and the issue of the Class Vehicles' merchantability, turn on evidence that is susceptible to 'generalized, class-wide proof': whether the piston rings in the Class Vehicles' Generation IV engines were defective at the time of sale or lease." *White*, 2023 WL 3278460, at *14 (citing *CGC Holding*, 773 F.3d at 1087 (predominance requires characterizing whether (1) "elements are susceptible to generalized proof, and (2) whether those that are so susceptible predominate over those that are not."). "Fundamentally, whether the Class Vehicles were merchantable, based on the quality of their piston rings [at the time of purchase], presents a 'predominating question' relating to the breach of class members' implied warranties 'that can resolve a central issue of this litigation in one swoop,' and moreover 'addresses a critical classwide piece of evidence and will not require individual consideration that would belie class treatment.'" *Id.* (quoting *CGC Holdings*, 773 F.3d at 1091). "Given the nature of Plaintiff['s] implied warranty claim and the common questions it presents, this is not a case where 'as a practical matter' the resolution of these common questions 'breaks down into an *unmanageable variety* of individual legal

and factual issues.'" *Id.* (quoting *Kunneman Properties, LLC v. Marathon Oil Co*., 2022

WL 1766925, at *11 (N.D. Okla. Mar. 31, 2022) (emphasis added) (quotation omitted)).

Here, the undersigned Magistrate Judge finds that Plaintiff presents sufficient evidence that

common questions predominate, which overcomes Defendant's assertion that

individualized claims regarding purchasing or leasing, or experiences with related repairs

on their vehicles, predominate.   Indeed, Defendant asserts that less than 1% of class

vehicles needed piston replacement for excessive oil consumption.   However, Plaintiff's

argument is:  (i) that the defect existed in all vehicles at the time of manufacture so the

breach occurred at the time of sale, (ii) that Oklahoma law does not require manifestation

to prove a claim for breach of the implied warranty of merchantability, and (iii) that

merchantability is determined at the time of sale.   "[T]o the extent that Defendant argues

that Plaintiff White lacks evidence, or has insufficient evidence to show, that there is a

common question or as to whether the Class Vehicles have defective pistons that cause the

oil consumption defect, the Court disagrees[.]"  *Id*.; *see also Sacred Heart Health Sys., Inc.*

*v. Humana Mil. Healthcare Servs., Inc*., 601 F.3d 1159, 1170 (11th Cir. 2010) ("Common

issues of fact and law predominate if they "ha[ve] a *direct impact* on every class member's

effort to establish liability *that is more substantial than the impact of individualized issues*

in resolving the claim or claims of each class member.") (quotations omitted)).   Defendant

fails to persuade the undersigned Magistrate Judge that individualized questions, such as

the nature of the purchase, *i.e.*, new, used, purchased, leased, predominate over the

common questions Plaintiff identifies.

**Damages.** Further, Defendant raises the issue of damages as a barrier to class certification for each of Plaintiff's claims. While it is true that class certification has been denied when "material differences in damages determinations will require individualized inquiries," *Roderick*, 725 F.3d at 1220, "[t]he fact that damages may have to be ascertained on an individual basis is not, standing alone, sufficient to defeat class certification. Instead, material differences in damages determinations will only destroy predominance if those 'individualized issues will overwhelm . . . questions common to the class.'" *Naylor Farms,* 923 F.3d at 798 (10th Cir. 2019) (internal quotation omitted) (citing *Menocal v. GEO Group, Inc.*, 882 F.3d 905, 922 (10th Cir. 2018); *Roderick*, 725 F.3d at 1220)).

Plaintiff, through expert Edward Stockton, proposes a benefit-of-the-bargain model for assessing damages based on the difference between the value of the vehicle bargained for and the value of the vehicle delivered. The difference is calculated using the cost to repair/replace, which Stockton asserts is $2,700 per vehicle, based on GM's own internal documents.[5] This satisfies the requirement of classwide evidence, rather than individualized, and is sufficient for predominance. *Hill*, 2010 WL 2474051, at *6 ("The

---

[5] There is some evidence/support for Defendant's position that the documentation of this cost applies to a different piston ring replacement, and Defendant contends the cost is materially different. *Siqueiros*, 676 F. Supp. 3d at 815 ("GM contends—and Plaintiffs do not dispute—that this memo, which was based on pre-Class Vehicles, concluded that the cost to replace the piston rings with '278-coated rings was $2,700."). Plaintiff has not sought, nor has Defendant provided, contrary evidence to this number. Both parties ultimately seem to rely on previous cases which determined this number as good as any. *Id.* ("Although the jury did not hear evidence regarding the repair cost for PVD-coated rings, in the absence of any indication to the contrary, the jury could reasonably have assumed that the cost of replacing the PVD-coated rings would be equivalent to the cost of replacing with '278-coated rings."). Because the question is a common one that predominates, the undersigned Magistrate Judge has no reason to delve further into this issue at this stage of the proceedings.

Court finds that Plaintiffs can prove liability under their various claims with the exception of their fraud claims through common proof in a single adjudication, and the liability issues predominate over individualized damage determinations which, in the circumstances of this case, could be accomplished by mathematical computations.").  As in *Naylor Farms*, the undersigned Magistrate Judge notes here that the Court "can later divide the class into subclasses for purposes of determining damages" as necessary.  *Naylor Farms*, 923 F.3d at 798 (citing Fed. R. Civ. P. 23(c)(1)(C), (c)(5)); *Roderick*, 725 F.3d at 1220).  *See also* 2 Newberg and Rubenstein on Class Actions § 4:51(4) (6th ed.) ("The determination of which issues predominate should not turn on the amount of time it will take to litigate the common or individual issues. The predominance test does not involve a comparison of court time needed to adjudicate common issues weighed against time needed to dispose of individual issues.").

       As other courts have held, the undersigned Magistrate Judge finds the issue of damages to be classwide, susceptible of common proof.  *See, e.g.*, *Sloan v. Gen. Motors LLC*, 2020 WL 1955643, at *51 (N.D. Cal. Apr. 23, 2020) ("As to damages, the Court has already explained that Plaintiffs' damages theory makes the issue of damages amenable to resolution by classwide proof. Any individualized inquiry into damages (where necessary) does not undermine the fact that common questions predominate.").  However, the undersigned Magistrate Judge finds the class should be limited to current owners and lessees, as of the date this Report is adopted by the Court, to prevent subjecting Defendant to multiple recovery as well as preventing current owners from splitting recovery with previous owners where previous owners would have already received the benefit of the

bargain. *Riddell*, Docket No. 93, p. 14 ("[F]or vehicles with multiple purchasers, it seems that that any 'benefit-of-the-bargain gap' not received by an initial purchaser would have been paid by a subsequent purchaser, and thus only current owners would be left damaged by not having received the benefit of their bargain."). Even so, "the possible need to determine damages on an individual basis— based on class members' purchasing or leasing experiences—does not defeat predominance[.]" *White*, 2023 WL 3278460, at *16 (citing, *inter alia*, *see, e.g., Tyson Foods*, 577 U.S. at 453; 2 Newberg and Rubenstein on Class Actions § 4:54 (6th ed.) ("[T]he black letter rule is that individual damage calculations generally do not defeat a finding that common issues predominate."); *Cf. Roderick*, 725 F.3d at 1220 (noting that district courts "should consider the extent to which material differences in damages determinations will require individualized inquiries" but that "the fact that damages may have to be ascertained on an individual basis is not, standing alone, sufficient to defeat class certification.") (quotations omitted)).

**Count V: Unjust Enrichment.** The Oklahoma Supreme Court "previously held 'unjust enrichment arises not only where an expenditure by one person adds to the property of another, but also where the expenditure saves the other from expense or loss. One is not unjustly enriched, however, by retaining benefits involuntarily acquired which law and equity give him absolutely without any obligation on his part to make restitution.' Before a party will be entitled to recover for unjust enrichment, however, 'there must be enrichment to another, coupled with a resulting injustice.'" *City of Tulsa v. Bank of Oklahoma, N.A.*, 2011 OK 83, ¶ 19, 280 P.3d 314, 319 (quoting *McBride v. Bridges,* 1950 OK 25 ¶ 8, 215 P.2d 830, 832; *Teel v. Public Service Co. of Oklahoma,* 1985 OK 112, ¶ 23,

767 P.2d 391, 398 (superseded by statute on other grounds)).  The Court already permitted Plaintiff to raise this claim, with the recognition that Plaintiff would not be entitled to double recovery under both breach of express warranty and unjust enrichment.  *See* Docket No. 46, p. 12 ("Mr. Hampton may allege a valid warranty exists and alternatively pursue unjust enrichment should the warranty claim fail. Indeed, GM has argued here the warranty is inapplicable to the defect Mr. Hampton identified.  While Mr. Hampton cannot recover under both theories, he is entitled to assert them.") (citing *Burlington N. & Santa Fe Ry. Co. v. Grant*, 505 F.3d 1013, 1030 (10th Cir. 2007) (permitting alternative pleading of unjust enrichment under Oklahoma law, so long as plaintiff does not obtain double recovery for the same injuries)).  This holding particularly stands where, as here the undersigned Magistrate Judge recommends denying class certification on Count II, Plaintiff's breach of express warranty claim.

Plaintiff contends this claim is susceptible of common proof because the question of whether the Limited Warranty covers the alleged default (which would bar an unjust enrichment claim) is the same for all class members, and there are no necessary individual inquiries because whether Defendant was unjustly enriched because of the present defect is common to all.  Defendant asserts this claim requires individual inquiries as to whether Defendant received any benefit from each transaction and then retained those benefits.  The cases cited by Defendant in support, however, are inapposite and/or distinguishable to the claim here.  *See Curtis v. Progressive N. Ins. Co.*, 2020 WL 2461482, at *2 (W.D. Okla. May 12, 2020) (At the commonality question, not reaching predominance:  "But the common questions alleged by Plaintiff regard whether use of the WCTL system violates

-37-

Oklahoma law or an auto policy term, and the answer to that question is that . . . it depends. It depends on the particular facts of each case and the *valuation rendered by use of the WCTL system in each case*.") (emphasis added); *Miller v. Farmers Ins. Grp.,* 2012 WL 8017244, at *14 (W.D. Okla. Mar. 22, 2012) ("Because the *particular circumstances (including whether an insured was informed of the claims practice)* will need to be examined in order to determine whether a "resulting injustice" occurred, the court finds certification of a class is not appropriate under Rule 23(b)(3) for the unjust enrichment claim.") (emphasis added); *Cox v. Allstate Ins. Co.*, 2012 WL 12860745, at *7 (W.D. Okla. Mar. 28, 2012) ("Because the *particular circumstances (including whether an insured was over-insured or did or did not recover depreciation regardless of receipt of a recovery letter)* will need to be examined in order to determine whether a "resulting injustice" occurred, the court finds certification of a class is not appropriate under Rule 23(b)(3) for the unjust enrichment claim.") (emphasis added); *see also Harvell v. Goodyear Tire & Rubber Co.*, 2006 OK 24, ¶ 21, 164 P.3d 1028, 1036 ("[F]or each class member, a decision as to whether unjust enrichment is applicable *will depend heavily on the services rendered, the amount of supply fee charged, the supplies used (if any), the cost of the shop supplies, and whether a customer agreed to pay the cost, even if it might have been purely for profit.* The success of a claim for unjust enrichment depends on the particular facts and circumstances of each case and hinges on whether a customer actually received few or no miscellaneous supplies.") (emphasis added).

The undersigned Magistrate Judge agrees with Plaintiff that whether one Limited Warranty for all Class Vehicles allows claims for this alleged defect, which would preclude

an unjust enrichment claim, and whether Defendant received the same artificially inflated price for each class vehicle (directly or indirectly through a dealer), are common questions needing no individualized proof.   While there appear to be substantial issues for summary judgment and/or merits determination, those questions are not yet squarely before the Court and do not preclude class certification at this time.   Accordingly, the undersigned Magistrate Judge finds that the common issues for an unjust enrichment claim under Oklahoma law also predominate.

**Rule 23(b)(3)(A)-(D).**   Returning to Rule 23(b)(3)(A)-(D), the undersigned Magistrate Judge finds that the first factor (Rule 23(b)(3)(A)), "the class members' interests in individually controlling the prosecution or defense of separate actions," more thoroughly addressed in the superiority discussion, below, do not preclude class certification in this case.   Additionally, no party argues that those other cases are a barrier to proceeding in this one (Rule 12(b)(3)(B)), nor do they devote any time expressing concerns as to this forum (Rule 12(b)(3)(C)).   As discussed throughout, Defendant raises numerous concerns that the issues in this case are far too individualized, making the management of this case difficult (Rule 23(b)(3)(D)), but as addressed above, the undersigned Magistrate Judge finds those arguments unavailing.

### F.  Rule 23(b)(3) - Superiority

Finally, Courts are instructed to find whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Rule 23(b)(3). As noted above, this factor also requires consideration of the list of four nonexhaustive

factors pertinent to the criteria set out in Rule 23(b)(3)(A)-(D).[6] "It is enough that class treatment is superior because it will 'achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *CGC Holding Co.*, 773 F.3d at 1096 (quoting *Amchem*, 521 U.S. at 615).

Plaintiff asserts this requirement is met because each putative Class Member would be entitled to a relatively small amount of money in comparison to litigation costs, and thus is the only realistic form of adjudication. "The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor." *Amchem*, 521 U.S. at 617 (quotation omitted). Defendant contends that manageability is a serious barrier here given its assertion that individual issues predominate and that there would need to be mini-trials for liability and damages for each member. Additionally, Defendant criticizes a lack of trial plan, including failure to account for an ever-changing class population as vehicles are bought and sold.

---

[6] "Although Rule 23(b)(3) states that these factors are pertinent to both superiority and predominance, 'most courts analyze [these factors] solely in determining whether a class suit will be a superior method of litigation.'" *Menocal*, 882 F.3d at 915 n.3 (quoting 2 William B. Rubenstein, Newberg on Class Actions § 4:64 (5th ed., Dec. 2017 update)). The undersigned Magistrate Judge considers the four factors as to both prongs in this case, out of an abundance of caution. *See also* Fed. R. Civ. P. 23(b) advisory committee's note to the 1966 amendment ("The court is to consider the interests of individual members of the class in controlling their own litigations and carrying them on as they see fit.").

Plaintiff argues that counsel already tried an oil consumption defect in *Siqueiros*, and that a cut-off date for class notice would easily address the remaining concerns.

The undersigned Magistrate Judge finds that the amended Proposed Class meets the Rule 23(b)(3) superiority requirement. The class members (identified through an appropriate cutoff date) would likely have little interest in controlling the prosecution or defense of separate actions, particularly given the number of putative class members and the reality that the individual awards, estimated at $2,700 per Class Member, are likely exponentially smaller than the cost of litigation itself. *See id*., 521 U.S. at 617 ("[T]he Advisory Committee had dominantly in mind vindication of the rights of groups of people who individually would be without effective strength to bring their opponents into court at all.") (quotation omitted); *see also* Rule 23(b)(3)(A). Furthermore, neither party disputes the current forum for this litigation or suggests that they are already part of other litigation regarding the same controversy *in Oklahoma*, and there are no problems identified by the parties that would render class action unmanageable (Rule 23(b)(3)(B)-(D)). As such, the scale of the case, the preference for uniformity of decision, and the continuing interests of judicial economy support a finding that class certification is the superior method here. *See, e.g., Hill*, 2010 WL 2474051, at *7 ("Putative class members, each of whose royalty interests may be quite small, would have little incentive to prosecute their claims individually because their costs would likely exceed the value of their individual claims. Thus, class treatment is a superior option here because 'the alternatives are either no recourse for thousands . . . to whom the courthouse would be out of bounds, or a multiplicity and scattering of suits with the inefficient administration of litigation which

follows in its wake.' . . . The superiority prong of Rule 23(b)(3) is clearly established in this case.") (quoting *Green v. Wolfe Corp.,* 406 F.2d 291, 301 (2d. Cir. 1968)).

*G. Determination*

In sum, the undersigned Magistrate Judge finds that Plaintiff satisfies its burden under Rule 23(a) and 23(b)(3) establishing this case as a class action as to his claims under the OCPA, as well as for breach of the implied warranty of merchantability and unjust enrichment, but not for breach of express warranty. Plaintiff's motion for class certification should be granted, and the following class certified, with the modifications as discussed above:

> All current owners or lessees [as of _____, 2024][7] of a 2011-2014 Chevrolet Avalanche, 2011-2014 Chevrolet Silverado, 2011-2014 Chevrolet Suburban, 2011-2014 Chevrolet Tahoe, 2011-2014 GMC Sierra, 2011-2014 GMC Yukon, and 2011-2014 GMC Yukon XL manufactured on or after February 10, 2011, that was equipped with a Generation IV 5.3 liter V8 Vortec 5300 LC9 engine that was purchased or leased in the State of Oklahoma.

**CONCLUSION**

Consequently, the undersigned Magistrate Judge hereby RECOMMENDS that Plaintiff's Motion for Class Certification [Docket No. 54] be GRANTED IN PART and DENIED IN PART. The motion should be GRANTED as to Plaintiffs Counts I (OCPA), III (breach of implied warranty), and V (unjust enrichment), and DENIED as to Count II (breach of express warranty). Furthermore, the undersigned Magistrate Judge finds that Plaintiff's counsel of record should be, and hereby are, appointed as counsel for the class.

---

[7] In the event the Court adopts this Report and Recommendation by Order, the date of that Order should be the cutoff date for the Class.

-42-

Because the Court determined that certification is appropriate under Fed. R. Civ. P. 23(b)(3), notice must be given to the class members. The undersigned Magistrate Judge therefore directs the parties to confer and submit to the court the agreed-upon notice within 28 days of this Report and Recommendation being adopted and made final, and ORDERS such notice to be served upon class members pursuant to Fed. R. Civ. P. 23(c)(2)(B) at that time. If the parties are unable to agree on the text of the notice, they shall jointly file by the same date Plaintiff's proposed text interlineated with Defendant's objections. Each party may also submit a separate brief in support of its position, to be filed simultaneously with the interlineated version of Plaintiff's proposed notice. Such briefs may not exceed ten (10) pages. Any response or reply is permitted only with leave of court upon a showing of good cause.

Any objections to this Report and Recommendation must be filed within fourteen days. *See* 18 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Any objections and response shall each be limited to 10 pages and a reply is permitted only with leave of court upon a showing of good cause.

**DATED** this 13th day of May, 2024.

**GERALD L. JACKSON**
**UNITED STATES MAGISTRATE JUDGE**